Good morning, Your Honors. May it please the Court, my name is John Delora. I represent J. T., the plaintiff appellant in this case. My client is asking this Court to reverse the denial of reimbursement of tuition and other expenses at Loveland Academy, which he attended for two years. The district court affirmed a decision by a hearings officer which resulted in a denial of reimbursement for basically three reasons. First, statute of limitations. Secondly, a finding that Loveland was an inappropriate placement. And third, a finding that the parent had failed to cooperate with the Department of Education. With regard to the statute of limitations, I think it's important to note that what the Court really did was to say that the 180-day statute of limitations prescribed by state law began running in July when my client first entered the Loveland campus for the purposes of being assessed for admission. Even though the basis for the reimbursement claim is governed by federal law, and that clearly started accruing in November when he was formally enrolled. In effect, the Court was saying that the statute of limitations begins running four months before the claim for reimbursement even arose. That, I submit, is a clear violation of the state law. The federal statute talks about reimbursing the costs of enrollment. The statute of limitations in Hawaii talks about the cost of placement. But the important point to be made is that the private school is only reimbursable if the private school is an appropriate placement. And it can only be an appropriate placement if it offers services that the child needs that are individually tailored to those needs. In this case, in July, Loveland was not an appropriate placement because they didn't know the needs that J.T. had that needed to be addressed. That was only determined after four months when they had completed the evaluation process and created a treatment plan that was put into effect on his formal enrollment in November. We therefore submit that the decision was wrong as a matter of law. And we've cited Judge Seabright's decision in a case, Makiko, in the District of Hawaii, that this Court adopted as a valid interpretation of when a placement occurs. Judge Seabright found that a student is placed in a unilateral parental placement, such as we're concerned here, when the student is enrolled in the private school. This Court adopted that definition in the case of KD versus DOE. Let's assume that you get over the statute of limitations. What does that then get you? Well, the second reason for denying reimbursement here was a finding that Loveland is inappropriate. And that's based upon the Court issued two decisions here, one on 1412, which is reimbursement of the tuition, and the other on compensatory ed, and stated a number of reasons why the Court believed Loveland was inappropriate. I won't go through each one of them, but I will focus on the first. The Court found that my client exhibited behavioral problems at school, and that was based solely on the testimony of two special ed teachers who simply said they didn't notice any problems when he was in public school, and then what had happened at Loveland where there were some minor problems. But the Court overlooked the fact that JT's difficulty here is not that he disrupts the class and that he interferes with other children, but his disabilities were basically withdrawing, shutting down. Dr. Bowman, the psychiatrist, termed it a pretending to learn. What would happen is a teacher would give lessons he wouldn't understand, he was afraid to ask questions because he didn't want to be criticized, and he didn't want to look to be dumb for the other students, and so he simply remained quiet, shut down. Is your argument, counsel, that it was inappropriate for the District Court to consider whether the program at Loveland resulted in some educational benefit or that she appropriately considered it but made clear errors in factual findings? She made clear errors. I think it's an abuse of discretion under U.S. v. Hinkson. I think all of the evidence really is on one side. On the question of behavioral problems that were noticed at Loveland but not in the public school, it's simply not true. The problems that he had were in the public school, and what we have are four mental health professionals, three clinical psychologists. If that's the case, and you're saying that the Court basically looked at a certain set of facts and made some misanalysis in determining whether there was regression or not, this is a situation where the Court was required to evaluate the conduct of both parties. So the Court went beyond just whether he did well at Loveland and talked about the level of cooperation or lack of cooperation by the parent, which then resulted in the inability to complete an evaluation. So let's assume you're right that there was a misstep by the District Court in analyzing the record with regard to the lack of progress. Why wouldn't those other findings and weighing of factors be sufficient to affirm in this case? Your Honor, there was no lack of cooperation. The DOE had a right to evaluate J.T. They asked the parent to consent to the evaluation. Within two weeks, the parent signed a written consent. The date for the evaluation, she requested that that be delayed, first because of a death in the family, and that's at extracts of record 405. And secondly, she didn't want the DOE to conduct a speech-language evaluation while Loveland was doing the same kind of evaluation because the two would interfere with the other. And that's at ER 275. The important point is the DOE agreed to delay the evaluation and basically said, let us know when it's convenient and we'll reschedule it. That's not a lack of cooperation. A lack of cooperation is where one party wants to do something and the other says no. In this case, both parties agreed that the evaluation could be put off. The parents, the other points to be made is that the case is really not a question of progress at Loveland. I think the issue in this case was determined by this Circuit's decision in C.B. v. Garden Grove, where significant growth, which the Court found did not exist at Loveland, is really irrelevant. The question for the appropriateness of a private school is whether, C.B. said, the private placement provides specially designed instruction supported by services the child needs to receive education. Did the district court make that determination? The district court tried to distinguish C.B. on grounds that are not distinguishable. That's not my question. Did it make that determination that Loveland would provide the type of services that would benefit J.T.? At the time, not looking back, but looking at the time she made the decision to put him the mom made the decision to put J.T. in Loveland. Was Loveland, did it meet that test that you just read? The court, I believe, erroneously found that Loveland actually exceeded the needs that J.T. had. Has anybody made a determination? Did the hearing officer make a determination that Loveland would have met his needs? The hearings officer found that Loveland did not meet J.T.'s needs because he misread one of the declarations in the record to say that Loveland really exists for the purpose of children at risk of psychiatric hospitalization. That takes a phrase out of context and is totally inconsistent with all of the evidence here, including the accreditation reports of the two agencies that accredited Loveland, one the Commission on Accreditation of Rehabilitation Facilities, the other National Independent Private Schools Association, both of which concluded that Loveland served the students well. So you just said that what the district court did was said, well, the program at Loveland provided too many, I guess I don't know quite what the district court said, but essentially was too beneficial or provided additional services that the child didn't really need. That's right. It said the intensive mental health program was not necessary for students' condition. So does that mean that it was not an appropriate place? That's the conclusion of the hearings officer and the court. The answer to that is that that was based on the testimony of special ed teachers who were really not trained in special ed at all. They were reclassified as special ed teachers in a program that Judge Ezra in this state had found to be contemptuous of consent decree. But the important point was that the court ignored the opinions of all of the mental health professionals which found that the kinds of programs that Loveland instituted here, the greater dependent support for the child is precisely what J.T. needed to cope with his unique mental health needs. He needed wraparound services. And the only thing one could say is that maybe there was too much, but the answer to that is not to say that the entire program is inappropriate. So I understood C.B. to say that if there's a showing or a finding that the private school would meet the needs, as you're saying, reimbursement for private education is not automatic. It's discretionary, and you look at a number of factors, one of which could well then be how the kid performed and what benefit the child got from the school. Well, Your Honor, all I can say is that under C.B., how the child performs is really not a criterion for the simple reason. Well, you'd agree, though. C.B. said, I mean, the statute says, and C.B., I think, amplifies this or demonstrates this, that getting reimbursement is not automatic just because the school met, you know, could meet the test of being a school that would provide the services. Well, Your Honor, I think. It's not an automatic. You don't have an automatic right to reimbursement for private education. Well, I hate to say that anything is automatic, but all I can say is that under 1412, if the parent removes the child from a public school because the public school failed to provide a free, appropriate public education, and if the parent enrolls the child in a private school which is an appropriate setting, meaning that it meets the child's needs, the parent is entitled to be reimbursed. Now, you might say that if the school provides too much, summer in Europe or master classes in music or something, the court certainly could decide that the expense is too high. But the court in this case said J.T. regressed at Loveland. So what's wrong with the court invoking what actually happened? Your Honor, there was no evidence of regression. Is that a proper standard? Well, if the child regressed in truth, then I think probably the services provided by the public school did not meet the child's needs. But that's not the case. You mean the private school? I'm sorry, in the private school. Yeah. In fact, the only thing in the record here about regression is the testimony of Dr. Tyson, one of the clinical psychologists, that said J.T. regressed during the last two years he was in public school because of the lack of dependent support that Loveland provided. Are you familiar with Adams v. State of Oregon? I am. And why does that case, doesn't that case say that the proper analysis for the parents, I mean it's talking about the district, but it seems the same applied to a parent. Do you look at the suitability and design and implementation at the time that the parent enrolls and selects the school, or do you have to wait to see whether the parent's choice worked out? Adams v. Oregon said you don't look at what happens in the future. It's a snapshot at the time of an IEP meeting, and that's how you determine whether an IEP is appropriate. And I would make the same argument here for a private school. You look at the needs that were provided to the student, not how the student performed later. And looking at the needs that were provided and looking at the opinions of the mental health professionals in this record, there's no question that those services met the needs that were identified by the psychiatrists and the psychologists. Do you want to save some time for rebuttal? I'm sorry? Would you like to save some time for rebuttal? Yes, I would. You have a minute there. Thank you. Good morning, Your Honors. My name is Kevin Richardson, and I represent the Apele Hawaii Department of Education. May it please the Court. The case before this panel concerns appropriate remedies for a procedural denial of FAPE under the IDEA. The argument presented by parents is that the only appropriate remedy in this situation is tuition reimbursement for $290,000, whether in the form of compensatory education or direct reimbursement, and attorney's fees as well. So parents argue that where tuition reimbursement is barred by the 180-day statute of limitations, that compensatory education is available to foot the bill at that point. However, this approach is nothing more than a means to revive a stale claim for reimbursement that would otherwise be barred by the statute of limitations. We disagree with this point. Parents failed at both the administrative level and before the district court to prove that tuition reimbursement was the appropriate remedy. Therefore, we urge the court to affirm the district court's decision that, one, parents' claim for unilateral tuition was untimely under Hawaii's statute of limitations, two, that the hearing officer's compensatory education award for services was the appropriate remedy, and three, that attorney's fees were appropriately denied for the duration of the remand proceedings. And if we don't agree with you on the statute of limitations? If you don't agree with us on the statute of limitations, then the two other points that were brought up by the district court was that Loveland was an inappropriate placement and parents failed to avail their child during the 60-day period that the speech-language assessment was open in order for DOE to properly assess the students' needs at that time. Could you address the first of those two grounds, the Adams issue I just raised with counsel? It seems to me looking at the fact that J.T. regressed implies that the court was judging the outcome as opposed to evaluating the choice at the inception, as Adams pretty clearly says, is the appropriate time to evaluate. Otherwise, the parents are at risk of, you know, if there's a denial of FAPE at the public school and they opt to put their child in a program that at the inception looks pretty good and adequate, and then the student regresses, they're out of luck. That doesn't seem correct. Certainly the school district under Adams doesn't bear that kind of risk. Well, Your Honor, I believe under CB there were two requirements for when a program is considered appropriate. So it's where an educational instruction is specially designed to meet individualized needs and where services are necessary to permit the child to benefit from instruction. So in looking at whether or not these needs were individually designed, you would have to go back to the alleged period that assessments were occurring. This is the July to November period. However, there's nothing in the record from Loveland that, A, that these assessments occurred or what these assessments found, whether they determined that there were needs and what students' needs were in that circumstance. So we don't know if Loveland met his needs because the initial baseline level of his determination of what he needs and the type of educational services he needs was never determined. In addition, the court in CB determined that significant benefits were provided by a private program, even though they did not meet all of the child's needs, that reimbursement was appropriate. However, on the other side, this court in MN upheld the district court's finding where the educational benefits conferred were meager. So in this case, the educational benefits didn't even rise to that base level of meager benefits because the student actually regressed. So tuition reimbursement... What does the record show how the student regressed, how the child regressed? So as we know, from 2008 to 2010, two of students' special education teachers testified that they didn't see shutting down, they didn't see the various behaviors that were included in Loveland's incident report, I believe, where he was throwing objects, where he chased a student with a blunt object, all kinds of behaviors that did not occur in the public school setting. These teachers observed him on a daily basis. They were... I believe the hearing officer qualified them as an expert witness and deemed that they were considered very credible. They observed him for this two-year period of time and didn't see any indication of that behavior. The worst, I believe, that they saw was that he needed to be... However, we get to Loveland, and all of a sudden there's these behaviors that are occurring. And based on the evidence, it appears that these behaviors were significant. However, later in, I believe it was March or... In a March 2011 progress report, there was a 180-degree turn, that these behaviors significantly improved. The difference that we know that occurred during that time is that the student was moved from his elementary school classroom to a middle-slash-high school classroom. So his academic setting changed because the level of his academic functioning was significantly higher than those that he was placed in this elementary school classroom. Whether or not these behaviors manifested as a result of that placement is unclear, but we do know that it's coincidental that his behaviors improved after he was moved to the appropriate classroom. In addition, looking at the issue of attorney's fees, attorney's fees are discretionary under the IDEA, so the court in its discretion may award reasonable attorney's fees as part of those costs. In making that determination, the equities of the case are a factor, a determinative factor, excuse me. So the situation here is not one where no fees were awarded whatsoever. Fees were awarded up to the point of the first order by the district court. However, each party was to bear their own fees on remand as part of the district court's order, and they were to also split the costs of the two evaluations that were to take place upon remand. However, if you look at the purpose of the remand, it was to conduct further fact-finding to establish whether an appropriate award of compensatory education might look like. The reason for this is because parents did not meet their burden in submitting evidence in the first place about, excuse me, at the administrative hearing level to demonstrate a sufficient need for compensatory education. So essentially parents had proven a denial of FAPE at the administrative level, but they hadn't met their evidentiary standard to show that they, that compensatory education was the appropriate relief. And this is exactly why the hearings officer award consisted of speech-language services that were contingent upon a future assessment, because a determination based on the facts that were presented couldn't be made at that time. Same problem occurred at the district court. There was insufficient information to determine whether an injury in fact occurred, and the record was, and I quote, devoid of sufficient facts with which the court could craft an appropriate award of compensatory education. So the case was remanded for further fact-finding, and this is where the fees were to be bared by individual parties. In addition, the court instructed on the remand proceedings that a lengthy protracted litigation would only compound the denial of a FAPE and possible injury that student may be suffering. Therefore, the court cautioned against relitigating issues and focusing instead on compensatory education and what facts both parents and the DOE would need to present in order to create and fashion an appropriate plan for compensatory education. Did that actually take place before the administrative officer? Yes, that did take place. So both the DOE and parents submitted a plan for compensatory education. Parents' plan only consisted of a request for tuition reimbursement. DOE's plan was deemed adequate by the hearings officer, but it lacked an up-to-date evaluation, and it also was not to be instituted until the student's IEP. An IEP meeting could be held, and it was an interim plan until an IEP meeting could be held. So what the hearing officer did is he took these two reports and implemented them into DOE's plan because the hearing officer determined that because tuition reimbursement was not appropriate because of the behavioral issues at Loveland, it was not deemed an appropriate setting, that the only thing they were left to work with was DOE's plan and these evaluations that occurred. So there was Dr. Bowman and there was the Uesata report, which was the speech-language assessment. So the court took these two reports, the Bowman and Uesata report, and took the recommendations and applied that to the services student was already receiving. So it was an additional layer of services that student was to receive on top of his current services at the time. And the hearing officer ordered that these services were to take place at the beginning of the 2013-2014 school year. So they would go into effect immediately upon student's school year beginning. So essentially when we look at attorney's fees and how this all played out, parents were gifted a second bite of the apple by the district court to present evidence for a claim for appropriate compensatory education in the remand proceedings. And now parents are asking that they get paid for this second bite. So as a matter of equity, we would ask that you affirm the district court's determination that attorney's fees were limited upon the remand proceedings. Addressing the issue of the statute of limitations. So in determining when the placement actually occurred, Judge Kobayashi looked at the nature of the educational programming. So what was being provided to the student, whether he was receiving related services, the nature and the character of the program at Loveland. So there's evidence in the record that demonstrates that student was receiving full programming. First, he was attending Loveland full time, five days a week, all day. He was participating in all of the programs that Loveland offered. And he was included in classes and receiving academic services. So the educational component at Loveland was in place during this time from July 2010 to November 2010. In addition, other students in the program wouldn't be able to distinguish. Well, was it clear at that time that he was going to be there indefinitely? The record doesn't indicate that he was going to be there indefinitely, but there was. He would have gone back to school in September, right? That's correct. But we would argue for even that period of time where he was receiving these services, the full array of services that a student would receive in a public school setting, that that would be considered a placement for that period of time. Wouldn't that make the accrual of the statute of limitations a bit dicey for parents? Excuse me? Wouldn't that make the accrual of the statute of limitations a bit dicey for the parents? You have a bright line when the child is actually enrolled in a program, an ongoing program in lieu of public school. What we would offer is that the date of attendance should be that date. So the date the student begins attending and is receiving this full array of services, special education and related services. Attendance, though, could only just be for a short period of time. You don't really know. Even a parent doesn't. The parent may be checking out the school. Yeah, I think if the evidence showed that the student was just there checking out the school and receiving assessments, that that might be a different situation. Here, though, the student was receiving all the services that enrolled students were receiving. He was there full time. And if you look at the billing records in this case, the period from July 2010 to July 2012, the duration that he was attending Loveland Academy, the billing is only marginally different between the period from July 2010 to November 2010 and the period after his alleged diagnostic period. What if he were there for two weeks trying it out? If he were there for two weeks and receiving the full array of services, then that would be his placement for that time. So the statute would run at that point. The statute would begin upon his attendance and his receivable services. First day, even though the two-week period was there to put him in the situation to see if they could actually service his needs. Your Honor, I believe it would be dependent upon the facts. But, again, if he was treated as a student that was fully enrolled there, if he was receiving the same amount of services that enrolled students were receiving, that he would be, for all intents and purposes, that would be his special education placement. If it were overtly and documented as a trial time for the parents to decide over that two-week period that Loveland met his needs, under your attendance test. Then tuition reimbursement would be appropriate in that case. No, I suppose the first two weeks is the critical time because they didn't file for reimbursement. They need the first two weeks not to be counted against the statute of limitations. Two weeks of testing by attendance, and then they enroll him in the third week. And, therefore, you're saying if the statute was triggered as soon as they started attending, he attended, and then they didn't file for reimbursement a year from whatever the time is from that point, then they would lose. If I understand you correctly, for that initial period, if he was attending, but it would be, again, it would be dependent on whether or not he was receiving the same services. No, he's getting the services because that's what they want to use to show that they can meet his needs. It's a proper placement. Then the clock would start ticking at that point. Day one. Day one. Okay. Thank you. Unless you have any other questions. I don't think so. Thank you very much, counsel. Thank you. Your Honors, once again, I think the assessment period does not start the statute of limitations running, because during that period there are no individually tailored services that are meeting JT's needs. They don't know what those services are going to be until they have completed their assessment of his condition and prepared a treatment plan. That doesn't take two weeks. It takes a number of months. In this case, it took between July and November. Therefore, the statute didn't run until the services that were tailored to JT's individualized needs were in place. I'd like to mention just briefly on this business of regression. The court did not specify what the regression was. Counsel has just mentioned an incident with a blunt object. That was a sporting event at Loveland Academy where a child made a remark about the team that JT was on. He took offense and he chased him around the playground. That was the so-called regression. There was no evidence of regression here. What we're talking about is a period at public school where the teachers basically did not recognize his problems, shutting down, ignoring, pretending to learn and not learning, in fact. And then at Loveland, he was challenged. And he did speak out from time to time and do things that he didn't do in public school where his needs were ignored. But that's not regression. That's learning. And as a result, Judge Kobayashi actually did say that even though she felt the services at Loveland were excessive, she said at the ER 34 that he apparently received some benefit, but she decided not to award any compensation for the time at Loveland because all of the services were excessive. I've mentioned Andrew F. versus Douglas as the Supreme Court's recent decision, which holds that the ID requires an ambitious program with challenging objectives. What Judge Kobayashi was applying here was the Rowland standard of basic floor of opportunity. I think you can't say that the school becomes inappropriate because it exceeds the child's needs. All you could say, as I said earlier, was maybe the compensation should be reduced. The problem, one final point on the compensation, on the compensatory education award that the court affirmed here, it's deficient for two reasons. First, it doesn't compensate J.T. All it does is to give him the services that Dr. Bowman said in his report were required to meet his mental health and speech language needs. And a compensatory education award must compensate for the denials of FAPE. This did not. Secondly, it's almost ironic. This case, the violations of FAPE occurred because the DOE failed to involve the parent in the IEP process. Here under the compensatory education award that the court affirmed, the DOE is doing exactly the same thing. It's designing this program based upon Dr. Bowman's evaluation without any participation by the parent. And so the remedy violates the law for the same reason the original denials of FAPE did. Thank you. Thank you. Counsel, we appreciate your arguments in this matter and the cases submitted at this time.
judges: Fisher, Paez, Nguyen